IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GREGORY MILLER,                              §
                                             §
            Plaintiff,                        §
                                             §
VS.                                          §      Civil Action No. 3:24-CV-0691-D
                                             §
WAL-MART STORES EAST, LP,                    §
                                             §
            Defendant.                        §

MEMORANDUM OPINION
AND ORDER

        In this removed diversity action by plaintiff Gregory Miller ("Miller") alleging claims

for discrimination and retaliation under the Texas Commission on Human Rights Act

("TCHRA"), Tex. Lab. Code Ann. § 21.001 *et seq*. (West 2021), defendant Wal-Mart Stores

East, LP ("Walmart") moves for summary judgment.  For the reasons that follow, the court

grants Walmart's motion and dismisses this action with prejudice.

I

        Walmart hired Miller on August 3, 2009 to work as a Grocery Order Filler/Freezer

at its Cleburne, Texas distribution center ("Center").[1]  Over the next several years, Miller

worked in various positions, including as a Dry Reserve Lift Driver, Order Filler, Grocery

Lift Driver, and Grocery-PE Driver Hauler.

_____

        [1]In deciding Walmart's summary judgment motion, the court views the evidence in
the light most favorable to Miller as the summary judgment nonmovant and draws all
reasonable inferences in his favor.  *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541
F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v.
Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

On March 4, 2016, while Miller was employed as a PE Driver Hauler, he sought an accommodation through Walmart's third-party administrator, Sedgwick Claims Management Services, Inc.'s Accommodation Service Center ("ASC"), due to a heart-related medical condition, i.e., cardiac arrhythmia. Miller requested that he be permitted to work only on the dry side of the Center. While the request was pending, Miller voluntarily applied for and transferred to the Grocer Detail Cleaning position. On May 4, 2016 ASC determined that Miller's requested accommodation could not be approved because it would excuse the performance of one or more essential job functions of Detail Cleaner, but it granted Miller an alternative accommodation ("2016 Accommodation") by providing extra freezer-related clothing, cold-resistant materials, and heated gloves.

On November 24, 2018 Miller applied for and was transferred to the position of Asset Protection Associate in Grocery. Approximately one year later Miller voluntarily applied for and was transferred back to the position of Detail Cleaner, which required him to work in areas requiring exposure to varying temperatures. Miller again requested an accommodation, and ASC approved the same alternative accommodation granted in 2016 (extra freezer-related clothing, cold-resistant materials, and heated gloves).

In July 2022 the Center's Assistant General Manager, Jason Smith ("Smith"), and Operations Manager, Benjamin McGrath ("McGrath") determined that associates within the Detail Cleaner role did not have a clear routine, which was resulting in inefficiencies within the Center. Accordingly, Smith and McGrath decided that, for approximately four months, October 1, 2022 through January 2023, the entire Detail Clean team, which consisted of eight

associates, would focus only on neglected areas of the Center, such as the freezers and dairy coolers.

When Smith met with Miller to discuss the expectations of the new routines, Miller expressed concerns about working full-time in the freezer/cooler. Smith told Miller that he should speak with someone in the Human Resources department about his concerns. On September 15, 2022 Melissa Warren ("Warren"), the Human Resource Office Manager at the Center, contacted ASC to inquire about the scope and status of Miller's 2016 Accommodation. ASC instructed Warren to notify Miller that a new accommodation request would need to be submitted through ASC.

On September 21, 2022 Miller submitted a new request for accommodation through ASC, requesting "no working in cold environments for long periods of time." P. App. (ECF No. 24) at 46. While his request was pending, Miller was allowed to apply for "open and posted" jobs in the Center that could satisfactorily and safely be performed during the request process. Miller continued to work until September 28, 2022.

ASC determined on October 3, 2022 that Miller's requested accommodation could not be approved because "it is [a part] of the job description." D. App. (ECF No. 22) at 42. As an alternative, ASC provided Miller the opportunity to apply for any open position that may be more suitable and better meet his needs/restrictions, either at the Center or at another facility. But it explained that Miller would "need to go through the normal application and interview process." *Id*. Accordingly, Walmart placed Miller on leave until he could locate a new position that complied with his restrictions.

Prior to his last day at work, Miller updated his career preference in the Associate Career Portal ("ACP") to indicate an interest in three types of positions: Grocery Lift Driver, Grocery PE Driver/Hauler, and Grocery Loader/Wrapper. When Warren received notice in November 2022 that a new requisition was going to be opened up for two of the positions in which Miller had indicated an interest, Warren immediately contacted Miller. Walmart maintains that she offered Miller his choice of the two open positions. Miller contends that Walmart only offered him the position of Lift Driver. Miller informed Warren that he had an attorney and would be declining the offer. On April 11, 2023 Walmart closed Miller's leave and terminated his employment because he had not used the ACP to apply for any open positions since November 4, 2022.

On October 14, 2022 Miller filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging, *inter alia*, that he had been effectively terminated because of his disability. He then sued Walmart in state court alleging claims for discrimination and retaliation under the TCHRA. Walmart removed the case on the basis of diversity jurisdiction and now moves for summary judgment. Miller opposes the motion, which the court is deciding on the briefs, without oral argument.

II

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the

moving party does so, the nonmovant must go beyond his pleadings and designate specific

facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37

F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence

is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof

as to any essential element of a claim renders all other facts immaterial. *See TruGreen*

*Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).

Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d

at 1076.

## III

The court begins with Miller's claim that Walmart violated the TCHRA when it

discriminated against him based on his disability by terminating his employment.

## A

The TCHRA prohibits discrimination in employment based, *inter alia*, on "disability."

Tex. Lab. Code Ann. § 21.051. A plaintiff bringing a discrimination claim under the

TCHRA can prove discrimination through direct or circumstantial evidence. *Mission Consol.*

*Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). "The first method, rather

straightforward, involves proving discriminatory intent via direct evidence of what the

defendant did and said." *Id*. But because direct evidence of discrimination is often "hard to

come by," the plaintiff can also rely on circumstantial evidence using "the burden-shifting

mechanism of *McDonnell Douglas*." *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973)); *see also Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005)

(confirming that *McDonnell Douglas* burden-shifting analysis applies to discrimination

claims brought under the TCHRA).

As modified, the *McDonnell Douglas* framework consists of three stages. First, Miller

must establish a prima facie case of discrimination, which "creates a presumption that

[Walmart] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*,

450 U.S. 248, 254 (1981). "To establish a *prima facie* case of disability discrimination under

the TCHRA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for

the job; [and] (3) that he was subject to an adverse employment decision on account of his

disability." *Diaz v. Maximus Servs., L.L.C.*, 2025 WL 602166, at *2 (5th Cir. Feb. 25, 2025)

(per curiam) (alteration in original) (internal quotation marks omitted) (quoting *Moss v.*

*Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017)).

Second, if Miller establishes a prima facie case, the burden shifts to Walmart to

articulate a legitimate, nondiscriminatory reason for the employment action taken against

him. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Walmart's burden

is one of production, not proof, and involves no credibility assessments. *See, e.g., West v.*

*Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).

Third, once Walmart has produced evidence of a legitimate, nondiscriminatory reason

for the adverse employment action, "the presumption of discrimination created by [Miller's]

prima facie case disappears," *Machinchick*, 398 F.3d at 350, and "the burden shifts back to

[Miller] to make an ultimate showing of intentional discrimination," *Campbell v. Zayo Grp.,*

*LLC*, 2015 WL 3903539, at *3 (N.D. Tex. June 25, 2015) (Fitzwater, J.) (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012)); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). To do so, Miller must prove "either (1) the reason stated by the employer was a pretext for discrimination, or (2) the [employer's] reason, while true, was only one reason for its conduct and discrimination is another motivating factor ('mixed motive')." *Reed*, 701 F.3d at 439-40 (citations omitted).

These three steps constitute the *McDonnell Douglas* framework. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

B

The court will assume *arguendo* that Miller can establish all of the elements of his prima facie case of disability discrimination under the TCHRA. *See, e.g.*, *Barnard v. L-3 Commc'ns Integrated Sys. L.P.*, 2017 WL 3726764, at *8 (N.D. Tex. Aug. 30, 2017) (Fitzwater, J.) (assuming *arguendo* that plaintiff had established prima facie case where plaintiff failed to meet her burden to create genuine issue of material fact on issue of pretext).

C

The court turns now to the second stage and determines whether Walmart has met its burden of production. Walmart has met this burden by producing evidence that it terminated Miller's employment because he failed to utilize his alternative accommodation by applying

for and obtaining a position that complied with his medical restrictions.

D

Because Walmart has met its burden of production, the burden shifts back to Miller to present evidence that would enable a reasonable jury to find that Walmart's reason is pretextual or that Walmart's reason, while true, was only one reason for its conduct and that discrimination was another motivating factor.

In his summary judgment response, Miller does not dispute that he failed to apply for a single open position at Walmart after his accommodation request was denied. He contends instead that

> [o]nly after Plaintiff requested his accommodation, was he told to resign, threatened with termination, and placed on leave in violation of company policy. Further, Defendant did not present a job opening until a month after Plaintiff was placed on leave. Most hourly employees cannot afford a month off of work, so their only option is to look for alternate employment. Defendant's blatant disregard for their policies, because Plaintiff requested an accommodation, creates a fact question as to the motivation behind Plaintiff's termination.

P. Br. (ECF No. 23) at 7.

Miller is correct that an employer's failure to follow its own policies can sometimes suggest a discriminatory motive and create an inference of pretext. *See, e.g.*, *Esparza v. Advanced Network Mgmt., Inc.*, 688 F.Supp.3d 505, 516 (W.D. Tex. 2023) ("A failure to follow an internal policy can create an inference of pretext if the policy is specific and 'followed in most circumstances.'" (citing cases)), *aff'd*, 2025 WL 764602 (5th Cir. Mar. 11, 2025). But he fails to present evidence that would permit a reasonable jury to find that, in

this case, Walmart failed to follow company policy.  *See, e.g.*, *Paris v. Sanderson Farms,*

*Inc.*, 542 Fed. Appx. 370, 375 (5th Cir.2013) (holding that employer was entitled to summary

judgment on FMLA claim where employee based pretext argument on employer's violation

of "its own company policy," but failed to adduce evidence that employer had actually

violated any company policy); *Grubb v. Sw. Airlines*, 296 Fed. Appx. 383, 390 (5th Cir.

2008) (per curiam) ("Failure to follow internal procedures is generally not enough to create

a genuine issue of fact as to discriminatory motives.").  Concerning Walmart's reasonable

accommodation process, its Accommodation in Employment Policy ("Policy") states:

> If the associate's request for job assistance is accompanied by
> medical documentation indicating that they cannot perform the
> essential functions of their job, or if the associate specifically
> indicates they cannot perform an essential function of their job,
> do not immediately place the associate on Leave of Absence
> (LOA).  First determine if there is an open posted job in your
> facility the associate can satisfactorily and safely perform *during
> the request process*.
>
> If there is an open posted position in your facility that the
> associate can satisfactorily and safely perform:
>
> •Allow the associate to temporarily work in that position; and
> direct the associate to immediately call ASC to begin the
> accommodation process as 1-855-489-1600
>
> If there is no open vacant posted position the associate can
> satisfactorily and safely perform:
>
> •Immediately contact ASC for LOA approval at 1-800-530-
> 9929; and
> •direct the associate to immediately call ASC to begin the
> accommodation process at 1-855-489-1600.

P. App. (ECF No. 24) at 41-42 (emphasis added).  Miller has not adduced any evidence that

would enable a reasonable jury to find that Walmart failed to follow the Policy when he requested an accommodation in September 2022. To the contrary, the undisputed evidence shows that, during the time when ASC was processing his request for an accommodation, Miller was permitted to remain in his current position until October 1, 2022, and was notified that he could apply for "open and posted" jobs in the Center that he could satisfactorily and safely perform during the request process. Miller was not placed on leave until *after* his accommodation request was denied. Miller's allegation that he was "placed on leave in violation of company policy," P. Br. (ECF No. 23) at 7, is unsupported by the summary judgment record.

Nor can Miller raise a genuine issue of material fact regarding pretext or mixed motives based on the contention that, "before [he] was told not to come back to work," there were five available jobs—Grocery Loader/Wrapper, Grocery Orderfiller-Dry, Grocery PE Driver/Hauler, Grocery unloader/processor, and Grocery Orderfiller-DD—that would accommodate his restriction of "no working in cold environments for long periods of time," but these jobs "were not offered." P. Br. (ECF No. 23) at 3. This is because Walmart has produced undisputed summary judgment evidence that the only positions posted in the ACP in which Miller indicated an interest were (1) Grocery Lift Driver, (2) Grocery PE Driver/Hauler, and (3) Grocery Loader/Wrapper; at the time when Miller updated his preferences in the ACP, there were no requisitions open for Grocery Lift Driver or Grocery Loader/Wrapper, and the Grocery PE Driver/Hauler position that had been opened on September 20, 2022 was filled; and as soon as Warren was notified that a new requisition

was going to be opened up for two of the positions in which Miller had indicated an interest, she contacted him to offer him his choice of at least one of the open positions.[2]  Miller has not adduced any evidence that would enable a reasonable jury to find that he "applied when jobs opened and was never given a position on the dry side."  Pet. (ECF No. 1-3) ¶ 5.5.[3]

Miller has failed to introduce evidence that would enable a reasonable jury to find that Walmart's proffered reason for terminating Miller's employment—i.e., his failure to apply for and obtain an alternate position that complied with his medical restrictions—was a pretext for disability discrimination, or that Walmart's reason, while true, was only one reason for its conduct and that discrimination was another motivating factor.  Accordingly, the court grants Walmart's motion for summary judgment on Miller's TCHRA disability discrimination claim.

---

[2]In his response, Miller contends that he was forced to look for alternate employment because Walmart did not present a job opening until one month after he was placed on leave. [P. Br. (ECF No. 23) at 7]  But the summary judgment evidence is undisputed that, from the date when Miller updated his ACP preferences until November 4, 2022 [D. Mot. (ECF No. 20) at 12], *there were no open requisitions* for any of the positions in which Miller had expressed an interest.  "The plaintiff bears the burden of proving that an *available* position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315-316 (5th Cir. 2007) (emphasis added) (citations omitted); *see also Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist *and be vacant*." (emphasis added)).  Miller has not met this burden with respect to the alternate positions for which he applied.

[3]Miller testified at his deposition that Walmart had permitted employees in the position of Order Filler to clean on the dry side only, but conceded that he did not apply for an Order Filler position because "[t]here was no guarantee that [he] would be cleaning versus order filling" and he "wanted to be cleaning."  D. App. (ECF No. 22) at 18.

IV

The court turns next to Miller's claim for retaliation under the TCHRA. This claim is based on the contention that Walmart "fir[ed] him instead of accommodating him." Pet. (ECF No. 1-3) at ¶ 6.2.

A

Because Miller relies on circumstantial evidence to support his retaliation claim, he must proceed under the same *McDonnell Douglas* burden shifting framework addressed in § III, above. Miller must first demonstrate a prima facie case of retaliation by showing that (1) he engaged in an activity protected by the TCHRA, (2) he experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018) (citation omitted). As to the third element, the causation standard at the prima facie stage "is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action." *Id.* (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)). If Miller establishes a prima facie case, the burden shifts to Walmart to articulate a legitimate, nonretaliatory reason for the action taken. *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07. This burden is one of production, not of proof. *West*, 330 F.3d at 385. If Walmart meets its production burden, the burden shifts back to Miller to produce evidence that retaliation for his protected conduct, rather than Wal-Mart's proffered legitimate nonretaliatory reason, was the "but-for cause" of the adverse employment action. *See, e.g.*, *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 488-89 (5th Cir. 2004) (holding that "but

for" standard applied to retaliation claim under TCHRA).  "In order to avoid summary

judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of

whether the employer would not have taken the action 'but for' the protected activity." *Feist*

*v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (ADA

case) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

B

The court will assume *arguendo* that Miller has established a prima facie case of

retaliation.  And for the reasons explained above, the court holds that Walmart has produced

evidence of a legitimate, nonretaliatory reason for terminating Miller's employment.

Therefore, the court focuses its analysis on the causation prong of Miller's retaliation claim.

C

In support of causation, Miller contends that he

> had no reprimands during his employment as a detailed cleaner.
> Only after requesting an accommodation not to work on the
> perishable side, was [Miller] told to resign and not to come back
> to work until he reapplied for another job, despite applying and
> being denied multiple positions.  Defendant failed to follow
> their policies in an attempt to get Plaintiff to resign.

P. Br. (ECF No. 23) at 8.  Setting aside Miller's failure to cite to any evidence in the

summary judgment record, the court concludes for the reasons already explained that Miller

has failed to raise a genuine issue of fact on the question of pretext or on the ultimate

"but-for" showing.  Accordingly, the court holds that Walmart is entitled to summary

judgment dismissing Miller's TCHRA retaliation claim.

\*   \*   \*

Accordingly, for the reasons explained, the court grants Walmart's motion for summary judgment and dismisses this action with prejudice by judgment filed today.

**SO ORDERED**.

September 8, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE